UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 4:09CR393 DJS (AGF) |
| MARILYN D. BROWN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motion filed by Defendant, Marilyn Brown. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion to suppress statements. (Doc. #37). An evidentiary hearing was held on July 2, 2009. The government was represented by Assistant United States Attorney Hal Goldsmith. Defendant was present and represented by her attorney, Steven C. Edelman. At the hearing, the government presented the testimony of Detective Jatonya Claiborn, who has been employed with the St. Louis Metropolitan Police Department (SLMPD) for approximately 11 years, and is assigned to the Intelligence Division; and Detective John Anderson, who has been employed with the SLMPD for 19 years, assigned to the Intelligence Division for the past 10 years, and who is also detached as a Task Force Officer with the Federal Bureau of Investigation. Trial is scheduled for August 17, 2009. Based on the testimony and evidence adduced and

having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

On June 3, 2009, Defendant Marilyn Denise Brown, was indicted with two co-defendants, each of whom was charged with attempt to distribute heroin. The charges were filed following an extensive undercover investigation that began in late 2008 and involved electronic and video surveillance of activities, calls, and meetings. The indictment alleges that Defendant Brown and the two co-defendants were each employed as Corrections Officers with the City of St. Louis, at the City Justice Center, and that while serving as Corrections Officers they each entered into agreements to bring illegal contraband, including heroin, in to an inmate at the City Justice Center in exchange for cash.

On June 4, 2009, at approximately 6:15 - 6:20 a.m., Det. Claiborn and Det. Frederick Lathan went to Defendant's residence in North St. Louis County to arrest her on the warrant. They were both dressed in plain clothes, wearing bulletproof vests that identified them as Police on the front and back, and had their police badges displayed on a chain around their necks. While Det. Claiborn quickly checked the back of the residence, Det. Lathan knocked on the door or rang the bell. A woman asked from inside who was there, and they identified themselves as police officers. The woman asked what they wanted, and they responded that they wanted to speak with Marilyn Brown, and asked if she was Marilyn Brown. She said she was, and then opened the inside door, but

2

not the screen door.  She asked what they wanted, and they said they would really like to talk with her.  She then went to get a key for the screen door.  When she returned, she unlocked the screen door and let the officers in.  The officers did not draw their guns or use any force, and did not threaten Defendant in any manner.

Once inside, they advised Defendant that they had a warrant for her arrest.  Det. Lathan displayed some handcuffs and Defendant said, "Wait.  What is going on?"  She then began to resist by pulling away from him.  Det. Claiborn walked to the hallway to make sure no one else was there, as she knew that Defendant was a Corrections Officer and was concerned that she could have a firearm present.  While Det. Claiborn checked the hall, Defendant continued to pull away and resist being handcuffed.  When Det. Claiborn turned back toward Defendant, however, she stopped resisting and complied with their efforts to place her in handcuffs.

At the time, Defendant was wearing a nightgown.  After she was placed in handcuffs and they were beginning to leave, Defendant indicated that she wanted to get dressed, stating she was not wearing any underwear.  Det. Claiborn advised Defendant that in light of what had just transpired, they were not going to uncuff her, but that she would accompany Defendant and permit her to get some clothing.  Defendant directed them to her bedroom, and advised Det. Claiborn where she could locate underwear and other clothing.  Det. Lathan left the room while Det. Claiborn assisted Defendant in putting on pants and underwear.  Defendant then slipped on some shoes, and Det. Claiborn retrieved a shirt and jacket for Defendant.

They then transported Defendant to the headquarters building of the Drug Enforcement Administration ("DEA"), where they met Detective Rice, who is employed with SLMPD and detached to a DEA Task Force. He directed them to an interview room in the booking/holdover area. Dets. Claiborn and Lathan, who had not made any attempt to interview Defendant, left after they brought Defendant to the interview room.

At approximately 7:25 a.m., Det. Rice and Det. Anderson, who were both dressed in casual attire, met with Defendant in the interview room. By this time Defendant was no longer in handcuffs. Det. Anderson advised Defendant of her rights under Miranda by reading from a card that he keeps with him. At the hearing he read into the record the rights as he read them to Defendant that day. Defendant stated that she understood her rights. They asked her if she wanted to discuss the events surrounding the drug transaction of which she was suspected, and she said she would.

Defendant admitted to the detectives that she assisted in bringing narcotics to an incarcerated inmate. She stated that an inmate gave her the telephone number of someone to contact to pick up heroin. She contacted that person several times on the telephone, and per their agreement, met him outside the Justice Center at the end of her shift. She got into his car, which was in fact Det. Johnson's car, and they drove around. She said the individual then gave her the heroin and $100, and after driving around some more, dropped her off at the Justice Center. She then drove home and hid the heroin outside, in her barbecue pit. Several days later, she retrieved the heroin, put it into her pocket, entered the Justice Center, and delivered the heroin to the inmate, as arranged. Defendant

4

then stated that she would like to work "underground," adding that she could work with the police in connection with other criminal activity about which she knew. Det. Johnson asked if she was suggesting that she work in an undercover capacity, and she said yes.

The entire interview lasted approximately five minutes and was at all times calm. The officers did not physically threaten or verbally abuse Defendant in connection with her statements, nor did they display their firearms. Defendant appeared very cooperative and did not at any time request a lawyer. After the interview concluded, the detectives brought Defendant to the U.S. Marshal for processing.

## CONCLUSIONS OF LAW

In her motion, Defendant asserts that her statements should be suppressed because she was not advised of her Constitutional rights, the statements were not voluntary, and the statements were elicited after she requested to speak to an attorney and was denied that opportunity. From a factual standpoint, the Court finds no basis for Defendant's assertions, and finds that Defendant was in fact advised of her Miranda rights prior to any questioning and at no time requested an attorney.

A defendant may knowingly and intelligently waive her rights and agree to answer questions. Miranda v. Arizona, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing, and intelligent waiver of Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157, 168-69 (1986). The court must examine the totality

5

of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception, and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412, 423-24 (1986). "A waiver is knowing if it is 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' (citation omitted) It is voluntary if it is 'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" United States v. Syslo, 303 F.3d 860, 865 (8th Cir. 2002) (quoting Moran, 475 U.S. at 421); accord United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (noting two distinct dimensions of the inquiry).

Further, the statement itself must be voluntary and not the product of any police conduct by which the defendant's will is overborne. Connelly, 479 U.S. at 170; Haynes v. Washington, 373 U.S. 503, 513 (1963). "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry." Dickerson v. United States, 530 U.S. 428, 444 (2000). As the Supreme Court has recognized, however, "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda, are rare." Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984); see also Dickerson, 530 U.S. at 444.

Here the officers advised Defendant of her rights prior to any questioning, and Defendant knowingly and voluntarily waived her rights. In this regard, the Court notes

that, as reflected in the court record, Defendant was 54 years old at the time of these events, and inasmuch as she worked as a corrections officer, was aware of her rights.  No promises or threats were made to induce Defendant to waive her rights, nor was there any use of force, and there is no evidence that Defendant was under the influence of any drugs or narcotics.

The government has also met its burden to establish that Defendant's statements were voluntary.  "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination."  United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc), cert. denied, 543 U.S. 1145 (2005).  In determining voluntariness, the court examines the totality of the circumstances.  Id.  Relevant factors include the length of the detention, the repetitive and prolonged nature of questioning, the accused's age, and the questioning tactics.  Simmons v. Bowersox, 235 F.3d 1124, 1133 (8th Cir. 2001).  Here, the interview lasted only approximately five minutes, and no threats, force, or unfair questioning tactics were used.  As such, the Court finds that Defendant's statements were voluntary and that no basis exists for the suppression of her statements.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements [Doc. #37] be **Denied**.

The parties are advised that they have ten (10) days in which to file written

objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

_/s/ Audrey G. Fleissig_
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 6th day of July, 2009.